US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

FEB 2 7 2020

DOUGLAS F. YOUNG, Clerk
By
        Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## TEXARKANA DIVISION

KIM HOLSTON                                          PLAINTIFF

VS.                    CASE NO. 4:17-CV-04005 SOH

THE CITY HOPE, ARKANSAS,
A Public Body Corporate and Politic
CATHERINE COOK, In Her
Individual and Official Capacity as
City Manager, and LARRY YORK,
In His Individual and Official Capacity
as Public Works Director                             DEFENDANTS

### NOTICE OF APPEAL

"Notice of Appeal to the
United States Court of Appeals
for the Eighth Circuit"

Pursuant to Rule 4(a)(3) of the Federal Rules of Appellate Procedure, Kim Holston, the plaintiff is taking an appeal to the United States Court of Appeals for the Eighth Circuit from the final Order of Dismissal of the Western District of Arkansas, Texarkana Division granting the defendants' motion for summary judgment, entered in this case on January 6, 2020. The *Memorandum and Opinion* and *Order of Dismissal* entered on January 6, 2020, granted the defendant's *Motion for Summary Judgment*. (**A copy of said memorandum and order is attached herein as Exhibit 1A and 1B**).

The parties to the order appealed from and the names of addresses of their respective attorneys are as follows:

a)    Kim Holston – *pro se*

1

Respectfully submitted,

Kim Holston, *pro se*
1807 N. Sherman
Hope, Arkansas 71801
Telephone: 1-870-397-4559

By: *Kim Holston*

      Kim Holston, *pro se*

## CERTIIFICATE OF SERVICE

I, Kim Holston, do hereby certify that a copy of the foregoing Notice of Appeal has been served on Amanda LaFever, Attorney at Law, Arkansas Municipal League, 301 West Second Street, North Little Rock, Arkansas 72115, by placing a copy of the same in the United States Mail, first class, with postage prepaid, on this 2 7 day of February 2020.

*Kim Holston*

      Kim Holston, *pro se*

2

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KIM HOLSTON                                                    PLAINTIFF


v.                          Case No. 4:17-cv-04005


THE CITY OF HOPE, ARKANSAS;
CATHERINE COOK, in her Individual and
Official Capacity as City Manager; and
LARRY YORK, in his Individual and Official
Capacity as Public Works Director                             DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 27). Plaintiff has

responded. (ECF No. 38). Defendants have replied. (ECF No. 41). The Court finds this matter ripe

for consideration.

## BACKGROUND

This case is an employment discrimination and civil rights action brought under Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Americans with Disabilities

Act of 1990 ("ADA"), 42 U.S.C. § 12112; and 42 U.S.C. § 1983. Plaintiff Kim Holston is an epileptic,

African American female who alleges that Defendants discriminated against her during the course of

her employment on the basis of her race, sex, and disability.

Defendant City of Hope, Arkansas ("the City") maintains wastewater treatment facilities for

the purpose of treating and disposing of the City's raw sewage. Plaintiff was hired by the City in

January 1987, as a laboratory technician in the City's Wastewater Department. In 1992, the City

promoted Plaintiff to Assistant Superintendent of the Wastewater Department, and in 1999, Plaintiff

was again promoted to the position of Wastewater Superintendent. As Wastewater Superintendent,

Ex. A

Plaintiff oversaw the City's two wastewater treatment plants, wastewater collection lines, and manholes.

Defendant Cook—a Caucasian female—has been employed by the City since 1990, serving as City Manager since 1996. As City Manager, Defendant Cook oversees all City operations and reports to the City's Board of Directors. Defendant York—a Caucasian male—has served as the City's Public Works Director since 2009. As Public Works Director, Defendant York oversees several of the City's departments, including the Wastewater Department.

Plaintiff started having seizures in April 2014. On October 4, 2014, Plaintiff suffered a severe grand mal seizure, requiring her to be hospitalized for three days.[1] Due to complications from this seizure, Plaintiff took sick leave from October 28, 2014, through July 3, 2015. While Plaintiff was out on sick leave, Defendant York became more involved in the day-to-day operation of the Wastewater Department.

Defendants contend that after Defendant York became more hands-on in the Wastewater Department, he discovered that the wastewater facilities were in a state of disrepair, operating poorly, and struggling to comply with environmental laws. Defendants attribute the substandard state of their wastewater facilities to Plaintiff mismanaging her department and not performing her job duties as Wastewater Superintendent. Defendants further state that the deterioration of their wastewater facilities had obviously been going on for years, not just in the time that Plaintiff had been out on sick leave. However, Plaintiff alleges that the City had an antiquated sewer system slated for major overhauls and that Defendants were well aware that the facilities were in disrepair. Plaintiff also alleges that she was adequately performing her job duties, with Defendants urging her to keep the ailing wastewater system running at maximum capacity despite any potential consequences.

---

[1] "A grand mal seizure causes a loss of consciousness and violent muscle contractions. It's the type of seizure most people picture when they think about seizures." Mayo Clinic, *Grand Mal Seizure*, https://www.mayoclinic.org/diseases-conditions/grand-mal-seizure/symptoms-causes/syc-20363458 (last visited December 16, 2019).

While Plaintiff was on sick leave, Defendant York brought in Michael Arney—a Caucasian male—and Scott Ross—an African American male—to help run the Wastewater Department. Arney was serving as the Superintendent of the Street Wastewater Department and took over the running of the Wastewater Department, essentially combining the two departments. Ross, who had been previously employed by the Wastewater Department under Plaintiff, was brought in as a plant operator.

On July 13, 2015, Plaintiff was released to return to work with the following restrictions: no driving, climbing, or heavy work, office work only, and no starting and stopping pumps, engines, or generators to control flow of raw sewage. Plaintiff alleges that when she returned to work, she was relegated to sitting in an office and told to do nothing because she had been replaced by Arney and Ross. Specifically, Plaintiff alleges that Arney had assumed all of her administrative duties and that Ross was performing all of her physical duties. Plaintiff also alleges that she was willing and able to perform her job duties, but that Defendant York was upset that she was allowed to return to work and told her to stay out of Ross's way because he was now in charge of the wastewater facilities.

In the fall of 2015, Plaintiff thought she would have to have surgery and knew she would be terminated if she was absent from work past February 2016 because she had used all of her available sick leave. Plaintiff expressed her concerns to Defendant Cook and told her that she was thinking about retiring.

In October 2015, Plaintiff communicated to Defendant Cook that she was going to retire at the end of the calendar year. Defendant Cook allowed Plaintiff to use her remaining sick leave and vacation time to extend her employment through her January anniversary date in order to obtain another year of service in the state retirement system. Plaintiff's retirement date was set for February 1, 2016.

On December 3, 2015, Plaintiff turned in an unsigned return to work note, from Dr. Victor Biton, stating that she had no work restrictions at that time, and that if any seizures with altered awareness occur, restrictions may apply. Plaintiff then informed Defendant Cook that she was no longer going to retire. Defendant Cook responded to Plaintiff via letter.

In the letter, Defendant Cook detailed how Plaintiff had recently informed Defendant Cook that she had been diagnosed with epilepsy, was continuing to experience seizures, had a tumor on her brain, was experiencing memory loss, had been referred to a brain surgeon, and had indicated that she would be retiring in February 2016. Defendant Cook further explained that she could not accept Dr. Biton's return to work note because Dr. Biton was not the physician who signed Plaintiff's previous return to work note, and she had no knowledge that Dr. Biton was aware of the essential functions of Plaintiff's job or the location at which she worked. Defendant Cook affirmed Plaintiff's retirement date of February 1, 2016.

Defendants state that the decision to accept Plaintiff's decision to retire was entirely Defendant Cook's and that Defendant Cook was not influenced by anyone else in that decision. Defendants further state that Defendant Cook encouraged Plaintiff to go ahead and retire because Defendant Cook believed that Plaintiff was unable to perform her required job duties and because it had become apparent that Plaintiff had not been satisfactorily performing her job duties in the past. Conversely, Plaintiff argues that she never had poor job performance reviews, that she was given no opportunity to resume her job duties when she returned, and that Defendant York influenced Defendant Cook's decision to not allow her to return to work.

Plaintiff retired on February 1, 2016. On February 2, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), contending that the City discriminated against her on the basis of her sex, race, and disability. On August 31, 2016, the EEOC sent Plaintiff a notice-of-right to sue letter. On January 31, 2017, Plaintiff filed this lawsuit,

alleging claims of employment discrimination and civil rights violations. Defendants filed their Motion for Summary Judgment and supporting documents (ECF Nos. 27-29) on October 11, 2019, arguing that they are entitled to summary judgment on all of Plaintiff's claims. Plaintiff opposes the motion.

## LEGAL STANDARD

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted). Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). Accordingly, the Court applies the same summary judgment standard to discrimination cases as it does to all others.

## DISCUSSION

Plaintiff claims that Defendants violated Title VII, the ADA, and her civil rights pursuant to section 1983 by not allowing her to return to full duty and forcing her to retire from her employment with the City because of her race, sex, and disability. The Court addresses each of Plaintiff's claims below.

### I.  Title VII Claims

Title VII of the Civil Rights Act of 1964 "provides remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). Under Title VII, it is unlawful for an employer to discriminate against an individual with respect to "compensation, terms, conditions, or privileges of employment" because of that person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion for summary judgment on a Title VII claim, a plaintiff must either offer direct evidence of discrimination or create an inference of discrimination under the *McDonnell Douglas* burden-shifting framework. *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014); *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

Plaintiff has provided no direct evidence of discrimination on any of her claims, and thus, she must create an inference of discrimination under the *McDonnell Douglas* burden-shifting framework.[2]

---

[2] Certain comments allegedly made by Defendant York could be construed as direct evidence of discrimination. However, as discussed below, these comments are too far removed in time to be direct evidence of discrimination. Moreover, Plaintiff does not cite to these comments as direct evidence of discrimination and instead attempts to create an inference

To create an inference of discrimination under *McDonnell Douglas*, the plaintiff must first make a *prima facie* case of discrimination. *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996). If the plaintiff makes this showing, the burden shifts to the defendant to present evidence of a legitimate, non-discriminatory reason for the action it took. *Id.* If the defendant makes this showing, the plaintiff must then show that the defendant's proffered reason is merely a pretext for illegal discrimination. *Id.*

## A. Race Discrimination

The Court now addresses Plaintiff's race discrimination claim. As discussed above, Plaintiff's race discrimination claim is subject to *McDonnell Douglas* analysis.

### 1. *Prima Facie* Case

As stated above, Plaintiff bears the initial *McDonnell Douglas* burden of establishing a *prima facie* case of race discrimination. She must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was meeting her employer's legitimate job expectations; and (4) the circumstances give rise to an inference of discrimination (for example, if a similarly situated employee outside the protected class was treated differently). *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009); *Tolen v. Ashcroft*, 377 F.3d 878, 882 (8th Cir. 2004). In establishing a *prima facie* case, "the plaintiff's burden 'is not onerous.'" *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). However, a failure to establish any element of a *prima facie* case defeats a Title VII discrimination claim. *Tatum v. City of Berkeley*, 408 F.3d 543, 550-51 (8th Cir. 2009).

Defendants concede that Plaintiff, an African American, is a member of a protected class. However, Defendants argue that (1) there was no adverse employment action; (2) Plaintiff was not

---

of discrimination via *McDonnell Douglas* on each of her claims.

meeting the City's legitimate job expectations; and (3) there are not sufficient facts to give rise to an inference of unlawful race discrimination.

### i. Adverse Employment Action

Defendants argue that Plaintiff did not suffer an adverse employment action because she voluntarily chose to retire. Plaintiff's response does not address this argument, and thus, the Court finds that Plaintiff did not suffer an adverse employment action. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). Moreover, retirement only amounts to an adverse employment action when an employer forces an employee to choose between early retirement or continuing to work under intolerable conditions, like the threat of termination without benefits. *Smith v. World Case Ins. Co.*, 38 F.3d 1456, 1461 (8th Cir. 1994).

In the case at bar, Plaintiff voluntarily decided to retire, publicly announced her decision, and met with Defendant Cook to schedule her retirement so she would receive an extra year of service in the state retirement system. There are no facts in the summary judgment record indicating that Defendants forced Plaintiff to retire with the threat of making her work conditions intolerable. Rather, Defendant Cook refused to allow Plaintiff to later renege on her decision to retire after her retirement plans had been finalized. Therefore, the Court finds that Plaintiff did not suffer an adverse employment action. Consequently, Plaintiff cannot establish a *prima facie* case and the Court's analysis could end here. However, the Court will nonetheless address the remaining *prima facie* elements.

### ii. Meeting Legitimate Job Expectations

Defendants argue that Plaintiff was not meeting her job expectations as Wastewater Superintendent because they found the wastewater facilities in poor condition when Plaintiff went on sick leave in October 2014. Plaintiff has failed to address this argument or cite any binding authority

on this issue. Consequently, the Court finds that Plaintiff has failed to prove that she was meeting her legitimate job expectations. *See Satcher*, 558 F.3d at 735. Thus, Plaintiff has failed to establish the third element of her *prima facie* case.

### iii.   Inference of Unlawful Race Discrimination

The Court now turns to the final *prima facie* element—whether the facts of this case give rise to an inference of unlawful race discrimination. Plaintiff makes three arguments that this element is satisfied.

First, Plaintiff argues that Defendant York commented that she should not have been hired because she was a woman, called her a "black bitch," and stated that she had "screwed the city out of paying for her degrees." Defendants dispute that any such comments were made, but contend that even if Plaintiff's allegations are true, these statements do not give rise to an inference of unlawful race discrimination.

Upon consideration, the Court agrees with Defendants. "Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support an inference of discrimination." *Yates v. Douglas*, 255 F.3d 546, 549 (8th Cir. 2001) (quoting *Simmons v. Oce-U.S.A., Inc.*, 174 F.3d 913, 915 (8th Cir. 1999)). The comments in question were allegedly made in either 2008 or 2009, years before Plaintiff retired in 2015. Thus, the Court finds that any comments allegedly made by Defendant York are too far removed in time from the events at issue in this case and do not give rise to an inference of unlawful discrimination. *See id.* (finding offensive comments made one to two years before adverse employment action were not evidence of discrimination).

Second, Plaintiff argues that Defendant Cook makes race-based decisions. Specifically, Plaintiff argues that Defendant Cook spoke with her about placing Nathaniel Holyfield, an African American, as Superintendent of the Sanitation Department. Plaintiff alleges that Defendant Cook

expressed a belief that because Holyfield was African American, he would do a better job managing the Sanitation Department, which consisted of mostly African American employees. Defendants dispute that Defendant Cook made these statements. However, even if the Court assumes *arguendo* that Defendant Cook did say as much, this would mean that Defendant Cook treated members of Plaintiff's protected class—African Americans—more favorably, not less favorably, based on the protected class status. Accordingly, these alleged statements do not give rise to an inference of discrimination.

Finally, Plaintiff argues that she received disparate treatment compared to two similarly situated Caucasian City employees—Edith McBride and Jimmy Bush. "The test for whether employees are similarly situated . . . is rigorous." *Cronquist v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001). Plaintiff bears the burden of showing that employees used for comparison are similarly situated in all relevant respects. *Ghane v. West*, 148 F.3d 979, 982 (8th Cir. 1998). "The individuals used for comparison must have dealt with the same supervisor, have been subjected to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1044 (8th Cir. 2007). In addition, the individuals used for comparison must have held the same position. *See Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1082 (8th Cir. 2010). Employees are not similarly situated if one has a more extensive disciplinary history than the other. *See Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003) ("Three other individuals are not similarly situated because [the plaintiff] did not establish that the circumstances of their misconduct were comparable in severity or frequency to [her] infractions."); *Moss v. Texarkana Ark. Sch. Dist.*, 240 F. Supp. 3d 966, 974 (W.D. Ark. 2017).

Upon review, the Court finds that Plaintiff's comparators are not similarly situated. Plaintiff has put forth no evidence that either comparator shared the same supervisor, was subject to the same standards, engaged in the same conduct, held the same or similar positions, had similar tenures, or

had similar roles or responsibilities. In fact, the evidence shows that McBride and Bush were employed by the City's Police Department and differed from Plaintiff in all of these aspects. This precludes a finding that McBride and Bush are similarly situated to Plaintiff. *See Morgan*, 486 F.3d at 1044; *Ghane*, 148 F.3d at 982. Therefore, the Court finds that Plaintiff has failed to demonstrate an unlawful inference of discrimination by Defendants.

In sum, the Court finds that Plaintiff has failed to establish a *prima facie* case of race discrimination.

### 2. Legitimate Non-Discriminatory Reason

Assuming *arguendo* that Plaintiff has made her *prima facie* case, the *McDonnell Douglas* burden shifts back to Defendants, who must "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 435 (8th Cir. 2016). This is a light burden, as it is "one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Defendants state that Plaintiff voluntarily retired and that they accepted Plaintiff's decision to retire because after she went on sick leave, they discovered that the wastewater facilities were in poor condition and that she had not been performing her job duties. This is sufficient to shift the *McDonnell Douglas* burden back to Plaintiff to prove pretext.

### 3. Pretext

Plaintiff argues that Defendants' proffered reason for accepting her retirement is mere pretext for discrimination because (1) she received disparate treatment when compared to similarly situated Caucasian employees; and (2) she had been competently performing her job duties as Wastewater Superintendent for years.

As to Plaintiff's disparate treatment argument, the Court reiterates its earlier finding that Plaintiff's comparators are not similarly situated, and thus, Plaintiff cannot show pretext on this basis.

Plaintiff's argument that she had been adequately performing her job duties for years is likewise not demonstrative of pretext. A "strong showing that the plaintiff was meeting his employer's reasonable expectations at the time of termination may create a fact issue as to pretext when the employer claims that the employee was terminated for poor or declining performance." *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1084 (8th Cir. 2013). However, Plaintiff relies on past performance rather than performance at the time of her retirement and has admitted that there were issues with her department's performance before she began suffering seizures and went on sick leave. Plaintiff has also failed to cite any summary judgment evidence regarding her job performance at any time during her employment. This alone is fatal to Plaintiff's argument. *See Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). As such, the Court finds that Plaintiff has failed to prove pretext.

Overall, the Court finds that Plaintiff has failed to make her *prima facie* case and failed to prove pretext. Therefore, Defendants are entitled to summary judgment on Plaintiff's race discrimination claim.

### B. Sex Discrimination

The Court now turns to Plaintiff's sex discrimination claim. Plaintiff has not offered direct evidence of sex discrimination, and thus, her sex discrimination claim is also subject to *McDonnell Douglas* analysis.

### 1. *Prima Facie* Case

To establish a prima facie case of sex discrimination, Plaintiff must establish (1) she was a member of a protected class, (2) she was qualified for her job, (3) she suffered an adverse employment action, and (4) there are facts that give rise to an inference of gender discrimination. *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007). Defendants concede that Plaintiff, a female, is a member of

a protected class. However, Defendants contend that Plaintiff has failed to prove any of the other elements of her *prima facie* case.[3]

### i.      Qualified for Her Job

Defendants argue that Plaintiff was not qualified to perform her job based on the discovered state of their wastewater facilities after Plaintiff took sick leave. However, Defendants later allowed Plaintiff to return as Wastewater Superintendent after discovering the poor condition of the wastewater facilities. Therefore, for the purpose of summary judgment, the Court assumes that Plaintiff was qualified to perform her job. However, as discussed below, Plaintiff has failed to prove the remaining elements of her *prima facie* case.

### ii.     Adverse Employment Action

As discussed above, retirement only amounts to an adverse employment action when an employer forces an employee to choose between early retirement or continuing to work under intolerable conditions, like the threat of termination without benefits. *Smith*, 38 F.3d at 1461. There are no facts in the summary judgment record indicating that Defendants forced Plaintiff to retire with the threat of making her working conditions intolerable. To the contrary, it is undisputed that Plaintiff voluntarily chose to retire when she believed she did not have enough sick leave to recover from a potential upcoming surgery and that Defendants did not allow her to later renege on the decision after her retirement plans had been finalized. Therefore, the Court finds that Plaintiff did not suffer an adverse employment action.

### iii.    Inference of Unlawful Gender Discrimination

Plaintiff appears to argue that the circumstances of this case permit an inference of gender discrimination because she was treated disparately than similarly situated male City employees.

---

[3] Plaintiff acknowledges that her sex discrimination claim is subject to *McDonnell Douglas* analysis and recites the *prima facie* elements of sex discrimination in her briefing. However, Plaintiff does not argue several elements of her *prima facie* case and is largely unresponsive to Defendants' summary judgment arguments.

Specifically, Plaintiff alleges that she received disparate treatment compared to Jimmy Bush and Scott Ross.

It is Plaintiff's burden to prove that comparators are in fact similarly situated. *See Morgan*, 486 F.3d at 1044; *Ghane*, 148 F.3d at 982. Plaintiff has failed to set out facts or evidence that either comparator shared the same supervisor, were subject to the same standards, engaged in the same conduct, held the same or similar positions, had similar tenures, or had similar roles or responsibilities. Moreover, even if Plaintiff had carried her burden, the Court finds that she is not similarly situated to Bush and Ross. Bush was employed by the City's Police Department and his employment with the City differed from Plaintiff's in all material aspects. Although Ross was employed in the Wastewater Department, he was a plant operator whereas Plaintiff was the Wastewater Superintendent. There are no facts in the summary judgment record suggesting that Plaintiff and Ross shared the same supervisor, were subject to the same standards, engaged in the same conduct, held the same or similar positions, had similar tenures, or had similar roles or responsibilities. Therefore, the Court finds that the circumstances of this case do not permit an inference of unlawful discrimination based on disparate treatment.

In short, the Court finds that Plaintiff has failed to make a *prima facie* case of gender discrimination. However, assuming *arguendo* that Plaintiff did carry her *prima facie* burden, the Court will finish its *McDonnell Douglas* analysis.

## 2. Legitimate Non-Discriminatory Reason

Assuming *arguendo* that Plaintiff has made her *prima facie* case, the *McDonnell Douglas* burden shifts back to Defendants, who must "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Blackwell*, 822 F.3d at 435. This is a light burden, as it is "one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at 142. Defendants state that Plaintiff voluntarily retired and that they accepted her decision to retire because

after she went on sick leave, they discovered that the wastewater facilities were in poor condition and that she had not been performing her job duties.  This is sufficient to shift the burden shifts back to Plaintiff to prove pretext.

### 3.  Pretext

Plaintiff appears to argue that Defendants' proffered reason for accepting her retirement is mere pretext for discrimination because (1) she received disparate treatment when compared to similarly situated male employees; and (2) she had been competently performing her job duties as Wastewater Superintendent for years.  The Court finds both arguments unpersuasive.

Regarding Plaintiff's disparate treatment argument, the Court has found that Plaintiff's comparators are not similarly situated.  Plaintiff's argument that she had been adequately performing her job duties for years also fails to demonstrate pretext.  A "strong showing that the plaintiff was meeting his employer's reasonable expectations at the time of termination may create a fact issue as to pretext when the employer claims that the employee was terminated for poor or declining performance." *Ridout*, 716 F.3d at 1084.  However, Plaintiff again relies on past performance rather than performance at the time of her retirement and admitted that there were issues with her department's performance before she began suffering seizures and went on sick leave.  As such, the Court finds that Plaintiff has failed to prove pretext.

In sum, the Court finds Plaintiff has failed to prove her *prima facie* case and pretext.  Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's sex discrimination claim.

## II. ADA Claim

The ADA makes it unlawful for a covered employer to discriminate against any qualified individual on the basis of disability.  *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013) (internal quotation omitted).  The Eighth Circuit recognizes two kinds of claims under the ADA:  (1) reasonable

accommodation claims; and (2) discriminatory disparate treatment claims. *Fenney v. Dakota, Minn. & E.R.C.*, 327 F.3d 707, 711-12 (8th Cir. 2003). If a party alleges a discriminatory disparate treatment claim, then the traditional *McDonnell Douglas* burden-shifting framework applies. *Id.* at 712. On the other hand, if a party makes a reasonable accommodation claim, courts apply a modified burden-shifting analysis. *Id.*

Plaintiff's Complaint clearly alleges a claim for disparate treatment. However, Plaintiff has asserted a reasonable accommodation claim—for the first time—in her response to Defendants' Motion for Summary Judgment. The Court declines to address Plaintiff's newly raised reasonable accommodation claim at this late stage in the litigation. *See N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) (stating parties cannot "manufacture claims, which were not pled, late in the litigation for the purpose of avoiding summary judgment"); *see also Rodgers v. City of Des Moines*, 435 F.3d 904, 910 (8th Cir. 2006) (holding that district court properly refused to consider unpled allegations raised in a response to a summary judgment motion). Accordingly, the Court will only consider Plaintiff's disparate treatment claim and apply the traditional *McDonnell Douglas* analysis.

### 1. *Prima Facie* Case

"To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate (1) her condition qualifies as a disability within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she has suffered an adverse employment action due to her disability. *Samuels v. Kan. City Mo. Sch. Dist.*, 437 F.3d 797, 801 (8th Cir. 2006).

### i. Disabled Within the Meaning of the ADA

An individual is defined as disabled within the meaning of the ADA if they suffer from physical or mental impairment that substantially limits one or more major life activities. *Gutridge v.*

*Clure*, 153 F.3d 898, 900 (8th Cir. 1998). It is undisputed that Plaintiff was diagnosed with epilepsy and that when she returned to work, she was under restrictions preventing her from driving and performing manual labor. Therefore, the Court finds that Plaintiff has satisfied the first element of her *prima facie* case.

### ii. Qualified to Perform the Essential Functions of the Job

Defendants argue that Plaintiff was not qualified to perform her job based on the discovered state of their wastewater facilities after she took sick leave. However, Defendants allowed Plaintiff to return as Wastewater Superintendent after discovering the poor condition of the wastewater facilities. Therefore, for the purpose of summary judgment, the Court assumes that Plaintiff was qualified to perform the essential functions of her job. However, as discussed below, Plaintiff has failed to prove the final element of her *prima facie* case.

### iii. Adverse Employment Action

As discussed throughout, retirement only amounts to an adverse employment action when an employer forces an employee to choose between early retirement or continuing to work under intolerable conditions, like the threat of termination without benefits. *Smith*, 38 F.3d at 1461. There is no evidence that Defendants forced Plaintiff to work under intolerable conditions or that Defendants ever attempted to terminate Plaintiff's employment after she returned from sick leave. Instead, the summary judgment record indicates that Plaintiff chose to retire and that Defendants did not allow her to back out of her decision after her retirement plans had been finalized. Therefore, the Court finds that Plaintiff did not suffer an adverse employment action.

Accordingly, the Court finds that Plaintiff has failed to establish a *prima facie* case of disability discrimination. However, assuming *arguendo* that Plaintiff can overcome her *prima facie* burden, the Court will complete the *McDonnell Douglas* analysis.

### 2. Legitimate Non-Discriminatory Reason

Defendants, must "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Blackwell*, 822 F.3d at 435. This is a light burden, as it is "one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at 142. Defendants state that Plaintiff voluntarily retired and that they accepted her decision to retire because after she went on sick leave, they discovered that the wastewater facilities were in poor condition and that she had not been performing her job duties. This proffered reason is sufficient to shift the *McDonnell Douglas* burden back to Plaintiff to prove pretext.

### 3. Pretext

To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both "that the employer's articulated reason for the adverse employment action was false *and* that discrimination was the real reason." *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (citation omitted) (emphasis in original). "This burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations." *Roxas v. Presentation Coll.*, 90 F.3d 310, 316 (8th Cir. 1996). Specifically, the plaintiff "must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Mathews v. Trilogy Commc'ns., Inc.*, 143 F.3d 1160, 1165 (8th Cir. 1998).

Plaintiff does not argue that Defendants' proffered reason for accepting her retirement is merely a pretext for discrimination. Rather, she devotes significant space in her briefing to arguing that Defendants failed to reasonably accommodate her disability. As discussed above, the Court will not entertain this newly raised claim. Moreover, the summary judgment record clearly indicates that Defendants' decision to place Plaintiff on office duty when she returned to work was based on a

doctor's restrictions. Even with these restrictions, the City did not demote Plaintiff or reduce her pay. Therefore, the Court finds that Plaintiff has failed to prove pretext.

Overall, the Court finds that Plaintiff has failed to prove her *prima facie* case and pretext and that Defendants are entitled to summary judgment on Plaintiff's ADA claim.

### III. Section 1983 Claims

Finally, the Court turns to Plaintiff's section 1983 claims.

Plaintiff's section 1983 claims for race and sex discrimination are subject to *McDonnell Douglas* analysis. *See Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003) (applying *McDonnell Douglas* to a section 1983 claim). As discussed above, Plaintiff has failed to create an inference of race and sex discrimination under *McDonnell Douglas*. Moreover, "an ADA violation is not actionable under [section] 1983." *Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034, 1038 (8th Cir. 1998).[4]

Accordingly, Defendants are entitled to summary judgment on Plaintiff's section 1983 claims.

**CONCLUSION**

For the above reasons, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 27) should be and is hereby **GRANTED**. Plaintiff's case is **DISMISSED WITH PREJUDICE**. A separate Judgment consistent with this Opinion will be entered.

**IT IS SO ORDERED**, this 6th day of January, 2020.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[4] Because the Court has found no constitutional violation occurred, it does not address Defendants' qualified immunity arguments.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KIM HOLSTON                                                    PLAINTIFF


v.                              Case No. 4:17-cv-04005


THE CITY OF HOPE, ARKANSAS;
CATHERINE COOK, in her Individual and
Official Capacity as City Manager; and
LARRY YORK, in his Individual and Official
Capacity as Public Works Director                             DEFENDANT

### <u>JUDGMENT</u>

Pursuant to the reasons set forth in the Memorandum Opinion in this case of even date, the

Court finds that Defendants' Motion for Summary Judgment (ECF No. 27) should be and is hereby

**GRANTED**.  Accordingly, Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 6th day of January, 2020.


                                        /s/ Susan O. Hickey
                                        Susan O. Hickey
                                        Chief United States District Judge

Ex. B